Claudia Perez, Esq (CA SBN#: 282684)
Law Office of Claudia Perez
1800 W Beverly Blvd, Ste 202
Montebello, CA 90640-3965
Telephone: 213-788-7834
Email: Claudia@CPimmigration.com

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISON**

| | |
|---|---|
| Jorge Luis ZELAYA-MENJIVAR<br><br>Petitioner,<br><br>v.<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, Acting U.S. Attorney General; Todd LYONS, Senior Official Performing the Duties of the Director, Immigration and Customs Enforcement; Jaime RIOS, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; Fereti SEMAIA, Warden, Adelanto ICE Processing Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>PETITIONER'S DHS NO: 094-775-687 |

## INTRODUCTION

1. Petitioner, Jorge Luis Zelaya-Menjivar, brings this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the legality of his arrest and detention under the custody of the U.S. Immigration and Customs Enforcement ("ICE").

2. Petitioner is a native and citizen of El Salvador who has been living in the United States since 2014. Petitioner's alien number is 094-775-687.

3. Petitioner is currently detained at the Adelanto ICE Processing Center ("Adelanto Detention Center") in Adelanto, California by immigration authorities.

4. His 2014 entry is his second entry into the ("U.S"). When he entered this time into the U.S. and due to his prior removal, he was ordered to have a reasonable fear interview in which he passed and was referred to immigration court for "withholding proceedings only." On March 10, 2015, the Immigration Judge ("IJ") granted Petitioner protection under the Convention Against Torture ("CAT").

5. Then after, Petitioner was ordered to have ICE check-ins since 2015. He never missed a check-in. However, on September 15, 2026, during his last ICE check-in he was detained by ICE despite having a CAT grant. He was transferred to the Adelanto Detention Center where he was notified he will be removed to Mexico.

6. Petitioner is filing this habeas as the following unconstitutional violations occurred: (1) Violation of the Fifth Amendment Due Process Clause under Procedural Due Process, (2) Violation of the Fifth Amendment Due Process Clause under Substantive Due Process, and (3) Violation of the Immigration and Nationality Act (INA) and Implementing Regulations.

7. Therefore, Petitioner seeks a writ of habeas corpus requiring Respondents to immediately release the Petitioner.

## JURISDICTION & VENUE

8. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 2201-2 (declaratory judgment). This action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), and United States Constitution Article I, Section 9 (Suspension Clause).

9. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

10. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C. § 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

11. Further, pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493 – 500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

**REQUIREMENTS OF 28 U.S.C. § 2243**

12. The court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

13. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

**PARTIES**

14. Petitioner, Jorge Luis Zelaya-Menjivar, is a citizen of El Salvador who resides in Los Angeles, California. He was previously in removal proceedings and is currently detained at the Adelanto ICE Processing Center.

15. Respondent, Markwayne Mullin, is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and

Nationality Act and oversees ICE, which is responsible for Petitioner's detention. Respondent Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

16. Respondent, Todd Blanche, is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review, and the BIA and immigration court system it operates, is a component agency. He is sued in his official capacity.

17. Respondent, Todd Lyons, is the Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement, a federal law enforcement agency within the Department of Homeland Security. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Senior Official Performing Duties of the Director, Respondent Lyons exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

18. Respondent, Jaime Rios, is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division. As such, he is the custodian of all persons held at the ICE facilities within the Los Angeles Field Office. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

19. Respondent, Fereti Semaia, is the Warden of the Adelanto ICE Processing Center and Desert View Annex, Adelanto, California, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

20. Respondent Executive Office for Immigration Review (EOIR) is the federal agency within the Department of Justice responsible for implementing the INA in removal proceedings, including for custody redeterminations or bond hearings.

21. Respondent Department of Homeland Security is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

22. Respondent Immigration and Customs Enforcement is the agency within DHS responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

**STATEMENT OF FACTS**

23. Petitioner, Jorge Luis Zelaya-Menjivar, is a native and citizen of El Salvador currently detained by ICE at the Adelanto ICE Processing Center since September 2026.

24. Petitioner is forty-nine (49) years old and has lived in the U.S. since 2014. He has been living in the city of Los Angeles for years.

25. Petitioner first entered the U.S. in 2006 and a few months after entering he was removed from the U.S. In May 2014, Petitioner re-entered the country where he expressed fear returning to El Salvador. In July of that year, Petitioner had a reasonable fear interview where he passed and was referred to the Chicago Immigration Court for "withholding-only" proceedings. Petitioner filed his I-589 form. On March 10, 2015, Petitioner was granted protection under CAT. (*See* Exhibit A – Order Granting CAT).

26. After being granted, Petitioner was scheduled to go to ICE check-ins. He never missed a check-in. Petitioner had been going to check-ins for over 10 years since 2015. Over these years he went to 13 check-ins. Prior to 2026 he would check-in once a year around the months of July and August. (*See* Exhibit B – Order of Supervision; ICE Form I-220B).

27. In 2026, Petitioner was asked to go four (4) times, which was an escalation from years prior. Petitioner went in January, which again was only after six (6) months after his last appointment and not in the same months of previous years. Petitioner was then asked to come back in April, and Petitioner attended like always. *Id.* At this appointment, Petitioner was asked to come back in July. (*See* Exhibit C – ICE Appointment Notice for July 2026). At his July appointment Petitioner attended with Counsel and was asked by ICE to take employment documents at his next appointment in September.

28. On September 15, 2026, Petitioner showed up with the required documents; however, Petitioner was detained and transferred to the Adelanto Detention Center where he remains today. ICE was aware of Petitioner's status and still took him into custody.

29. On September 18, 2026, ICE notified Petitioner he will be removed to Mexico where he has no ties to this country. It is a third (3rd) country removal.

//

## LEGAL STANDARD

**Writ of Habeas Corpus**

30. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

**A. Post-Removal-Order Detention Under 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4**

31. Because Petitioner has a final order of removal with a 2015 grant of protection under the Convention Against Torture (CAT), his detention is governed by the post-removal-order detention framework of 8 U.S.C. § 1231(a)(6) rather than the pre-removal provisions of 8 U.S.C. § 1226(a). See *Zadvydas v. Davis*, 533 U.S. 678, 682–83 (2001).

32. When a noncitizen's removal order becomes final, the government enters a "removal period," during which detention is generally mandatory. 8 U.S.C. § 1231(a)(2). However, if the noncitizen is not removed within the statutory 90-day removal period, the government may release the individual under an Order of Supervision ("OSUP"). 8 U.S.C. § 1231(a)(3). Petitioner was so released and remained compliant under his OSUP for over a decade.

33. When a noncitizen's removal order becomes final, the government enters an initial 90-day "removal period." 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within that period, the government may release the individual under an OSUP. 8 U.S.C. § 1231(a)(3). Petitioner long ago exhausted this initial statutory removal period following his 2015 CAT grant, whereupon he was lawfully released and remained fully compliant under his OSUP for over a decade. Because this initial period has already terminated, Respondents' sudden re-detention of Petitioner is governed strictly by the post-removal-period limitations of 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001).

34. Under 8 C.F.R. § 241.4, ICE retains administrative authority to revoke an Order of Supervision and re-detain a noncitizen. However, this executive authority is strictly limited. The

regulations require an individualized, reasonable custody review and a determination that release is no longer appropriate—typically requiring a showing of a significant "change in circumstances," such as the noncitizen becoming a threat to public safety or a flight risk. *Id.*; *see also* 8 C.F.R. § 241.13(i). Executive discretion to re-detain a compliant noncitizen is not unlimited and must have a reasonable, individualized foundation that comports with constitutional due process. *Zadvydas*, 533 U.S. at 698.

### B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention

35. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Rasul v. Bush*, 542 U.S. 466, 473 (2004).

36. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

37. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the grounds that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

38. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

**C. Civil Immigration Detention is Subject to Constitutional Limitation**

39. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

40. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**Fifth Amendment**

41. The Fifth Amendment guarantees a different constitutional protection: due process. The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

42. The Supreme Court has emphasized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Further, "once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

**A. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an Individual of Physical Liberty or Execute a Third-Country Removal Order**

43. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent," are

entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

44. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *accord Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property").

45. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

46. Applying the *Mathews* framework to the execution of a removal order, federal courts have established that due process is violated when the government executes a summary removal to a third country where the noncitizen has never previously been designated, without providing adequate written notice or an administrative opportunity to seek protection from torture. *D.V.D. v. United States Dep't of Homeland Sec.*, No. 26-1212, 2026 LX 533267 (1st Cir. Sep. 18, 2026). Because the government's discretion to execute removals and to revoke custody decisions under 8 U.S.C. § 1231 is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

47. Because the government's discretion to execute removals and to revoke custody release decisions under 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4 is not "unlimited," that discretion must comport with the *Mathews* framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698

## CAUSE OF ACTION

### COUNT ONE

***Violation of the Fifth Amendment Due Process Clause – Procedural Due Process***
***Unlawful Third-Country Removal Without Notice or***
***Administrative Opportunity to Seek CAT Protection***

48. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

49. The Fifth Amendment's Due Process Clause forbids the government from depriving any person of life, liberty, or property without due process of law. This clause explicitly protects noncitizens within the United States, including those subject to final orders of removal.

50. Procedural Due Process requires that before the government may execute a removal order to a third country—where a noncitizen has never previously been designated—the government must provide effective, individualized written notice and a meaningful opportunity to raise claims of persecution, torture, or death regarding that specific country. A generic notice that fails to provide tailored information regarding third-country removal procedures does not satisfy these constitutional requirements.

51. Petitioner is a member of the nationwide certified class in *D.V.D. v. DHS*, No. 1:25-cv-10676 (D. Mass.), which challenges Respondents' practice of executing third-country removals without notice or the opportunity to contest removal based on a fear of persecution or torture. Petitioner was ordered removed to Mexico, a country he has no connection to. He is from El Salvador where he cannot return due to his CAT protection.

52. By attempting to summarily deport Petitioner to Mexico within weeks of his re-detention, without formal written notice (not a generic one explaining why) and without an administrative screening mechanism (such as a Reasonable Fear Interview), Respondents are violating Petitioner's Procedural Due Process rights and acting in direct contravention of the certified nationwide class protections affirmed in *D.V.D.*

//

//

## COUNT TWO

***Violation of the Fifth Amendment Due Process Clause – Substantive Due Process***

***Unlawful and Arbitrary Deprivation of Physical Liberty Without Foreseeable Removal***

53. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

54. Substantive Due Process protects an individual's fundamental constitutional right to physical liberty against arbitrary, oppressive, or conscience-shocking government action, regardless of the procedures followed.

55. Since being granted protection under CAT in 2015, Petitioner has lawfully resided in the United States under an OSUP and has strictly complied with all ICE mandates, failing to miss a single scheduled reporting appointment for nearly over a decade. Petitioner would even complete tasks like taking documents ICE would request.

56. On September 15, 2026, Petitioner appeared as ordered for the third time this year when he would only go once a year, whereupon Respondents abruptly detained and deprived him of his physical liberty without prior notice, cause, or an individualized showing of a "change in circumstances," flight risk, or danger to the community as required by 8 C.F.R. § 241.4.

57. Because Petitioner's removal to his native country of El Salvador is legally barred by a final judicial order, and because his summary removal to a third country (Mexico) is constitutionally and statutorily prohibited under *D.V.D. v. DHS*, his removal is not reasonably foreseeable.

58. Accordingly, Respondents' ongoing deprivation of Petitioner's physical liberty lacks a legitimate regulatory purpose, is punitive in nature, and violates the Substantive Due Process component of the Fifth Amendment Due Process Clause as articulated by the U.S. Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

//

//

//

//

## COUNT THREE

***Violation of the Immigration and Nationality Act (INA) and Implementing Regulations***

***Failure to Comply with Statutory Third-Country Designation Procedures***

***under 8 U.S.C. § 1231(b)(2)***

59. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

60. Under the INA, specifically 8 U.S.C. § 1231(b)(2), Respondents must follow a strict sequential procedure to designate a country for removal. If the primary country (El Salvador) is unavailable due to Petitioner's 2015 CAT grant, Respondents may only remove Petitioner to a third country if that country is properly designated, has agreed to accept the individual, and where the individual's life or freedom would not be threatened. There is no evidence that all or any of this was done for Petitioner.

61. By attempting to summarily deport Petitioner to Mexico, a country never designated by an IJ or identified in writing during prior proceedings, Respondents are acting outside their statutory authority. Respondents are picking a country at random.

62. Removing Petitioner to Mexico without a lawful, individualized administrative determination of safety and willingness to accept him constitutes an unlawful shortcut of statutory mandates in violation of 8 U.S.C. § 1231(b)(2) and its implementing federal regulations.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Order that Petitioner shall not be transferred outside of the Central District of California while this petition is pending;

c. Order that Petitioner's removal from the United States is not executed pending the decision of this petition;

d. Issue an Order to Show Cause ordering Respondents to show cause within three days why this Petition should not be granted;

e. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody;

f. Enjoin Respondents from re-detaining Petitioner unless Respondents can demonstrate an individualized change in circumstances, flight risk, or danger to the community;

g. Award reasonable attorneys' fees and cost pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

h. Order further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: 09/29/2026

*/s/ Claudia Perez*

Claudia Perez, Esq (CA SBN#: 282684)
Law Office of Claudia Perez
1800 W Beverly Blvd, Ste 202
Montebello, CA 90640-3965
Telephone: 213-788-7834
Email: Claudia@CPimmigration.com
Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: 09/29/2026

*/s/ Claudia Perez*

Claudia Perez, Esq (CA SBN#: 282684)
Law Office of Claudia Perez
1800 W Beverly Blvd, Ste 202
Montebello, CA 90640-3965
Telephone: 213-788-7834
Email: Claudia@CPimmigration.com

**LIST OF EXHIBITS**

**Exhibit A** – Order Granting CAT

**Exhibit B –** Order of Supervision; ICE Form I**-**220B

**Exhibit C –** ICE Appointment Notice for July 2026